```
UNITED STATES DISTRICT COURT                    ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
AIR ITALY S.p.A.,                               :
                                                :
                           Plaintiff,           :    MEMORANDUM
                                                :    AND ORDER
            - against -                         :
                                                :    10-CV-20 (JG) (JMA)
AVIATION TECHNOLOGIES, INC. d/b/a               :
PUBLICCHARTERS.COM, and                         :
SCANDERBEG AIR,                                 :
                                                :
                           Defendant.           :
--------------------------------------------------------------- X
```

A P P E A R A N C E S:

    ALFORD, CLAUSEN & McDONALD, LLC
    One St. Louis Centre, Suite 5000
    Mobile, Alabama 36602
    By:   Christina May Bolin
          Lester M. Bridgeman
          D. Brian Murphy
    *Attorneys for Plaintiff*

    ROBERT C. CORDARO
    57 Tiffany Drive
    Dunmore, Pennsylvania 18505
    *Attorney for Defendant Aviation Technologies, Inc.*

JOHN GLEESON, United States District Judge:

        Plaintiff Air Italy S.p.A. brings this action against Aviation Technologies and Scanderbeg Air, asserting causes of action for breach of contract, promissory estoppels, and fraud. Aviation Technologies now moves to dismiss the complaint for failure state a claim upon which relief may be granted. For the reasons stated below, the motion to dismiss is denied.

BACKGROUND

A.  *The Initial Agreement Between Aviation Technologies and Sky King*

  This case involves a dispute over an air charter agreement. In February 2009, Sky King Inc. and Aviation Technologies, Inc. sought approval from the Department of Transport ("DOT") to operate a series of 40 round-trip charter flights between June 12, 2009 and September 13, 2009.[1] The proposed flights all originated from and terminated at John F. Kennedy Airport, and were destined for Tirana, Albania and Pristina, Kosovo. In the prospectus filed with the DOT, Sky King was identified as the "direct air carrier," and Aviation Technologies was named the "charterer." Am. Compl. ¶ 7. DOT approved the prospectus on March 4, 2009.

  Under DOT regulations, all customer payments to the charterer must be held in escrow. 14 C.F.R. § 380.34(c). The payments are held first in the charterer's escrow account, then in an escrow account in the carrier's name; the carrier only takes full possession of the customers' money two days after the completion of the flight. *Id.* In this case, Sky King and Aviation Technologies informed DOT that their escrow accounts were in a bank in Michigan.

  Though Aviation Technologies was officially the charterer, the complaint alleges that another company, Scanderbeg Air, took the lead in organizing the flights. According to the amended complaint, Scanderbeg was the "driving force in the solicitation of sales" for the flights, Scanderbeg "participated in financial proceeds of the charter sales," and Scanderbeg "actively participated in business decisions" with Aviation Technologies. Am. Compl. ¶ 9.

---

[1]   The number of round-trip flights was later reduced to 38.

For most of the period identified in the prospectus, the charter flights operated in accordance with the original plan, using Sky King's aircraft. On August 19, 2009, however, Sky King became unable or unwilling to fulfill its end of the bargain.

Scanderbeg and Aviation Technologies decided to continue with the flights without Sky King. They agreed that Aviation Technologies would take custody of the customer payments previously held in escrow for Sky King, and that Aviation Technologies would control that money in the interests of Aviation Technologies and Scanderbeg. According to the complaint, Aviation Technologies and Scanderbeg agreed that Aviation Technologies would make direct payment to the air carrier that replaced Sky King. Am. Compl. ¶ 11.

B. *The Contracts with Air Italy*

Scanderbeg and Aviation Technologies needed a new carrier to complete the remaining flights, and they turned to Air Italy. The complaint states that Scanderbeg was the "moving force" in arranging the new deal. Am. Compl. ¶ 9.

On August 20, 2009, Scanderbeg called Air Italy, proposing that Air Italy sub-charter one of its Boeing 757-200 aircraft to Sky King. Scanderbeg sent Air Italy a proposed Aircraft, Crew, Maintenance Insurance ("ACMI") Contract, whereby Air Italy would agree to fly the rest of the flights that Sky King had promised to provide. On its face, the "757 contract" was between, on one hand, Sky King and Scanderbeg, and, on the other hand, Air Italy. Am. Compl. Ex. A. Aviation Technologies's name appears nowhere on the 757 contract.

Beginning on August 23, 2009, Air Italy provided flights in accordance with the 757 contract. On August 28, 2009, Air Italy and Scanderbeg / Sky King entered into a replacement ACMI contract, the "767 contract," whereby Air Italy operated a substitute service

3

for the remainder of the chartered flights using a Boeing 767-300 airplane. The complaint states that Air Italy performed its obligations in full. Am. Compl. ¶ 15.

According to the complaint, the ACMI contracts, though nominally sub-charters between Air Italy and Sky King, were "arranged and entered into at the instigation, encouragement and participation of … Scanderbeg and Aviation Technologies for the purpose and with the intended effect of benefiting solely the economic interests of those two defendants." Am. Compl. ¶ 16. Air Italy asserts that Scanderbeg and Aviation Technologies chose to characterize the new arrangement as a sub-charter with Sky King in order to comply with the initial prospectus filed with DOT. According to Air Italy, Sky King was only a nominal party to the deal; in reality, Air Italy was dealing with Scanderbeg and Aviation Technologies.

C. *The Payments and Assurances by Aviation Technologies*

In line with the economic realities of the transaction, Air Italy did not look to Sky King for payment. Rather, the payments Air Italy received came from Aviation Technologies, which, as noted above, had taken full custody of the money paid by customers. Aviation Technologies made seven payments to Air Italy under the 757 contract.

Air Italy asserts that, when making those payments, Aviation Technologies "repeatedly assured Air Italy of the willingness and ability of Defendants to make all payments due, and to become due, under the contracts." Am. Compl. ¶ 18. The complaint alleges, however, that Aviation Technologies and Scanderbeg knew "well before the end of August 2009," and certainly before the 757 contract was signed, "that the amount of money available to them for payment to Air Italy was not, and would not be sufficient to pay the amounts due … to Air Italy under the terms of the ACMI contracts." *Id.*

4

At some point, Aviation Technologies stopped making payments to Air Italy. Air Italy claims it is owed $268,783.14 under the ACMI contracts.

D.  *The Proceedings Before this Court*

Air Italy initially filed this action on January 5, 2010 against Sky King, Scanderbeg, and Aviation Technologies.[2] Sky King and Scanderbeg have entered bankruptcy proceedings. On March 24, 2010 Sky King filed a Suggestion of Bankruptcy on the docket in this case. On the same day, Air Italy voluntarily dismissed the action as against Sky King.

With the Court's permission, Air Italy filed an amended complaint on April 21, 2010. The amended complaint omits Sky King as a party, but retains Aviation Technologies and Scanderbeg as defendants.[3] Aviation Technologies then moved to dismiss the complaint for failure to state a claim.

## DISCUSSION

A.  *The Standard on a Motion to Dismiss for Failure to State a Claim*

Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g., Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." (internal quotation marks omitted)). Accordingly, I must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam), and "draw all reasonable inferences in favor of the

---

[2]  This Court has alienage jurisdiction over the action because the plaintiff is a foreign corporation, the defendants are American corporations, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(2).

[3]  Scanderbeg has not responded to the complaint or otherwise appeared in this action. The Clerk of Court noted Scanderbeg's default on June 29, 2010.

5

plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

When considering a motion to dismiss, a court may examine (1) the factual allegations in the complaint; (2) documents attached to the complaint as exhibits or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

B.  *Air Italy's Asserted Causes of Action Against Aviation Technologies*

Air Italy appears to have valid causes of action for breach of contract against Sky King and Scanderbeg; Aviation Technologies contends that Air Italy must look to those parties for payment on the ACMI contracts. The complaint, however, purports to state claims against Aviation Technologies for breach of contract, fraud, and promissory estoppel.

   1.  *Breach of Contract*

To establish a breach of contract claim under New York law, which the parties agree governs this dispute, a plaintiff must prove: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Air Italy's breach of contract claim against Aviation Technologies faces a threshold difficulty: the stated parties to the ACMI contracts were Air Italy, Sky King and Scanderbeg. Aviation Technologies is not a signatory to those contracts, and nothing in the contracts themselves suggests that Scanderbeg was acting as an agent for Aviation Technologies. Accordingly, Aviation Technologies denies that it was ever a party to any contract with Air Italy.

6

Lacking any basis for an express contract between it and Aviation Technologies, Air Italy has two responses to the motion to dismiss the contract claim. Air Italy contends that Aviation Technologies impliedly adopted the contractual obligations that were explicitly undertaken by Scanderbeg and Sky King in the ACMI contracts. In addition, Air Italy asserts that it is the third-party beneficiary of an earlier agreement between Scanderbeg and Aviation Technologies, replacing Sky King as the beneficiary. *See* Am. Compl. ¶ 23.

Though these legal theories are conceptually distinct, I treat them together for present purposes, because each involves an implied contractual obligation owed by Aviation Technologies to Air Italy arising from the facts and circumstances of the parties' interactions. "A contract implied in fact may result as an inference from the facts and circumstances of the case although not formally stated in words ... and is derived from the 'presumed' intention of the parties as indicated by their conduct." *Jemzura v. Jemzura*, 36 N.Y.2d 496, 503 (1975). Nevertheless, like an express contract, a contract implied in fact requires mutual assent evincing the intention of the parties to be bound by specific contractual terms. *See Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 376 n. 5 (2d Cir. 2000). To determine the existence of a contract implied in fact, the focus rests upon the parties' conduct. *Watts v. Columbia Artists Mgmt., Inc.*, 591 N.Y.S.2d 234, 236 (3d Dep't 1992). Where the facts are inconsistent with a finding that the parties agreed to the specific terms of the contract to which they would be bound, no implied contract may be found to exist. *See, e.g., Lubeck Realty, Inc. v. Flintkote Co.*, 565 N.Y.S.2d 922, 924 (3d Dep't 1991).

In support of its contract claim, Air Italy relies heavily on the economic realities of the parties' deal. Though the ACMI agreements were styled "sub-charters" between Air Italy and Sky King, their effect was to oust Sky King from the remaining chartered flights. Air Italy

7

also notes that it would make little sense for Air Italy to assume that Sky King, which was plainly in economic difficulties, would be able to pay Air Italy for its performance under the contracts. The natural inference, Air Italy contends, is that Aviation Technologies should be liable in the same way that it had been liable to Sky King.

The ACMI contracts still provide a problem for Air Italy. One plausible interpretation of the obligations created by the parties is that Scanderbeg, rather than Aviation Technologies, was contractually answerable to Air Italy. Scanderbeg's name, not Aviation Technologies's, appears on the contracts as a signatory. The fact that the money owed to Air Italy under the contracts came from Aviation Technologies's account is insufficient to justify a contractual obligation on Aviation Technologies's part; the parties might have chosen to structure their relationship in this way without making Aviation Technologies liable.

Nevertheless, Air Italy has made sufficient allegations of an implied contract binding Aviation Technologies to survive the motion to dismiss. Specifically, the complaint asserts that, in the course of making payments to Air Italy, Aviation Technologies *itself* agreed to make future payments as part of a "campaign to induce Air Italy to continue its operations so long as required by Defendants." Am. Compl. ¶ 25. In addition, Aviation Technologies's position as a party to the initial agreement with Sky King adds credibility to the theory that Aviation Technologies's words and conduct should reasonably be understood as evincing a contractual intention. Supported by evidence, these allegations could support a finding of a collateral agreement by Aviation Technologies, separate from the ACMI contracts.

Claims of implied contractual obligation, particularly in intricate, specialized commercial situations such as these, are necessarily context-specific. In the absence of a more

detailed factual record, it would premature to dismiss the contract claim. Accordingly, I conclude that the complaint states a claim for breach of contract.

2. *Promissory Estoppel*

As an alternative to its contract claim, Air Italy seeks to impose liability on Aviation Technologies for its alleged payment assurances under the doctrine of promissory estoppel. To state a claim for promissory estoppel, a plaintiff must allege (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise. *See Williams v. Eason,* 854 N.Y.S.2d 477, 479 (2d Dept. 2008); *see also* Restatement (Second) of Contracts § 90. Air Italy is, of course, within its rights to proceed with alternative claims based on breach of contract and promissory estoppel.

A review of the complaint demonstrates that Air Italy has adequately pled the elements of a promissory estoppel claim. The complaint alleges that Aviation Technologies promised that it would pay Air Italy the amounts in the ACMI contracts. Though future factual development may shed further light on whether Aviation Technologies's reassurances were fairly construed as a promise, Air Italy has done enough at the pleadings stage to allege a clear and unambiguous undertaking to pay. The complaint further asserts that Air Italy relied on the promise to its detriment by continuing to perform under the ACMI contracts. That reliance was entirely foreseeable by Aviation Technologies – indeed, it appears likely that Aviation Technologies made the reassuring statements for the very purpose of inducing Air Italy to continue its performance. And Air Italy's contention that its reliance was reasonable is sufficiently plausible to survive a motion to dismiss. There is no indication, for example, that Aviation Technologies specifically disclaimed legal liability for reliance on its promises.

9

### 3. *Fraud*

Air Italy also asserts a common-law fraud claim against Aviation Technologies. To state a claim for common-law fraud under New York law, a plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997); *see also Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). This claim might succeed even if the breach of contract and promissory estoppel claims fail. One obvious advantage of success on the fraud claim is that punitive damages may be available.

When reviewing the sufficiency of the fraud claim, I bear in mind that it must meet a heightened pleading standard. Under Federal Rule of Civil Procedure 9(b), the circumstances alleged to constitute fraud must be pled "with particularity." The Second Circuit "has read Rule 9(b) to require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Air Italy's fraud allegations are as follows. The alleged misrepresentation is that, when it made payments to Air Italy, Aviation Technologies "repeatedly assured Air Italy of the willingness and ability of Defendants to make all payments due, and to become due, under the contracts." Am. Compl. ¶ 18. The complaint also states that Aviation Technologies knew that its statements were false. Aviation Technologies "knew … that the amount of money available to [defendants] for payment to Air Italy was not, and would not be, sufficient to pay the amounts

10

due, or that would become due, to Air Italy under the terms of the ACMI contracts." *Id.* Indeed, Air Italy asserts that Aviation Technologies knew that the money in the escrow accounts was insufficient at the time the 757 contract was concluded. *Id.* ¶ 19.

More specifically, the complaint quotes from an August 24, 2009 email sent by the President of Aviation Technologies to Air Italy, stating that "we have available to send the full ACMI payment for the completed flights, plus an additional $300,000 for future flights; all of these funds are NOT passenger funds and are available funds to place directly into Air Italy['s] operating account." *Id.* ¶ 25.

Standing alone, Aviation Technologies's assurances of future payment would not be enough to ground a fraud claim, because a broken promise is not a misrepresentation of fact. *See, e.g., New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318 (1995) (affirming dismissal of fraud claim, where plaintiff alleged "nothing more than a breach of the contract and any covenants implied"). Moreover, while some jurisdictions recognize a cause of action for fraud where a defendant enters into a contract with no intention of performing it, it appears that New York does not. *See Angel v. Bank of Tokyo-Mitsubishi, Ltd.*, 835 N.Y.S.2d 57, 60 (1st Dep't 2007). Air Italy's allegations do, however, include at least one misrepresentation that New York law would recognize as a statement of fact: that Aviation Technologies lied about the presence of sufficient funds in the escrow account.

In addition, the complaint makes adequate allegations that the misrepresentations were material, in that they were relevant to Air Italy's decision to continue performance under the ACMI contracts, rather than exercise its power to terminate the contract in response to a breach. Further, Air Italy has sufficiently alleged that it relied on the false statement, and that it suffered monetary loss as a result of its reliance.

Arguing that the fraud claim should be dismissed, Aviation Technologies says that Air Italy "is attempting to confuse the facts." Reply Br. 4. According to Aviation Technologies, it paid the "full ACMI payment" mentioned in the August 24, 2009 email, and forwarded an additional $545,332.78, a sum considerably higher than the $300,000 referred to in the email. In sum, Aviation Technologies disputes the assertion that any statement it made to Air Italy was false and contends that Air Italy never suffered any loss by relying on any statement by Aviation Technologies. If Aviation Technologies is right, it will be justly confident of victory on a motion for summary judgment. The argument, however, is ineffective at the motion-to-dismiss stage, where I am required to assume that adequately pled factual allegations are true.

## CONCLUSION

For the reasons stated above, the motion to dismiss the complaint is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 21, 2010
Brooklyn, New York